(No. 79750

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES M. DEAN, Appellant.

*Opinion filed February 20, 1997.*

Robert Agostinelli, Deputy Defender, and Ronald S. Packowitz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

James E. Ryan, Attorney General, of Springfield, and Greg McClintock, State's Attorney, of Monmouth (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Steven J. Zick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant was charged by information in Warren County with committing aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1992)) of his stepdaughter, E.C., between February 1, 1992, and October 6, 1992. The charge specifically alleged that the defendant, who was 17 years of age or older, knowingly committed an act of sexual penetration upon E.C., who was under 13 years of age when the act was committed, by placing his fingers in E.C.'s vagina. After waiving his right to a trial by jury, the defendant was convicted at a bench trial of aggravated criminal sexual assault and sentenced to 30 years' imprisonment. The appellate court, with one justice dissenting, affirmed the defendant's conviction and sentence. No. 3—93—0659 (unpublished order under Supreme Court Rule 23). We allowed the defendant's petition for leave to appeal (155 Ill. 2d R. 315), and now reverse the judgments of the appellate and circuit courts and remand for a new trial.

## FACTS

Prior to trial, the trial court conducted an *in camera* competency hearing of the five-year-old victim, E.C. The

court determined that E.C. was competent to testify. The State began its case by calling E.C. as its first witness. After a few background questions, E.C. became upset and started crying when asked about the defendant. E.C. then refused to respond to the State's questions. The court found that E.C. was not competent to testify at that time; however, the court reserved its ruling on the State's motion to obtain E.C.'s testimony by closed circuit television.

The State proceeded with its case by calling Sherry Dean, E.C.'s mother. Sherry testified that between July and November of 1992 she lived in a second-floor apartment of a three-story building at 509 East Broadway in Monmouth, Illinois, with the defendant and her four children. She married the defendant on October 10, 1992.

Rebecca Harrell, a mental health therapist at the Spoon River Mental Health Center in Monmouth, next testified for the State. Harrell testified that she first interviewed E.C. on November 3, 1992. E.C. was referred by the Illinois Department of Children and Family Services (DCFS) for assessment and possible treatment for alleged sexual abuse. According to Harrell, E.C. told her that she was living with her grandmother because "nasty Charlie hurted [sic] me." During their next session, E.C. stated to Harrell that her mother told her not to tell anyone what the defendant had done to her. During subsequent sessions, E.C. demonstrated her ability to identify body parts. E.C., through the use of an anatomically correct female doll, showed Harrell how the defendant had put his hand on her "pee pee" and stuck two fingers inside her and wiggled them around so that it hurt. Harrell also testified that E.C. indicated to her that the incident occurred on the bed in her mother's bedroom, and that after the defendant touched her genital area she tried to stick him with a fork. Accord-

ing to Harrell, E.C. did not make any allegations of sexual abuse against anyone else other than the defendant.

The next witness called by the State was Cherry Richardson, an investigator for DCFS. Richardson testified that she and police lieutenant David Brooks interviewed E.C. in response to an October 22, 1992, hotline report of possible abuse. During a series of interviews, E.C. told her that the defendant had touched her in her "private area." E.C. demonstrated with an anatomically correct female doll how the defendant had put his fingers into her vagina and moved them around. Again, E.C. stated that it "hurted." Richardson next testified that, on January 8, 1993, she and Lieutenant Brooks took E.C. for a drive to determine where the assault had taken place. When they approached the vicinity of 509 East Broadway, the location of the apartment building where E.C. used to live with her mother and the defendant, E.C. indicated that the incident did not happen upstairs or downstairs, but in the middle. When asked if the abuse had occurred at the apartment on Broadway, E.C. indicated that it occurred at "Jimbo's." E.C. referred to her biological father, James C., as "Jimbo." Richardson and Lieutenant Brooks took E.C. to James C.'s apartment, located at 405 South Main Street. Once inside the apartment, E.C. pointed to a rollaway bed in the corner of James C.'s bedroom, which she identified as "mommie's." James C. later testified that the bed had been at Sherry's apartment on Broadway until the children were removed from her care sometime in November of 1992.

Also testifying as a witness for the State was Dr. Sun Park, a pediatrician at Community Memorial Hospital in Monmouth. On October 27, 1992, Dr. Park examined E.C. Prior to the examination, E.C. told Dr. Park that the defendant had hurt her. After an exami-

nation of E.C., Dr. Park testified that E.C.'s genitalia displayed a widened vestibule and were missing a membrane usually found present in young girls. In Dr. Park's opinion, E.C.'s condition could have been caused by forcible digital penetration, and had probably occurred at least a few days prior to the examination.

At the close of its case in chief, the State recalled E.C. as a witness. After responding to some preliminary questions, E.C. was asked if anything happened between her and the defendant. E.C. refused to respond in the defendant's presence. The State then renewed its motion to take E.C.'s testimony by closed circuit television. The court granted the State's motion over the defendant's objection.

At the closed circuit television proceeding, E.C. testified that she currently lives with her father, "Jimbo." However, she used to live with her mother, her siblings and the defendant. According to E.C., while she lived at her mother's house, the defendant came into her bedroom and put his fingers into her "private" and moved them around and hurt her. E.C. stated that she told both of her parents that the defendant touched her. E.C. also testified on cross-examination that the defendant had cut off the heads of puppies with a knife. She saw blood on the counter and the floor.

After the State concluded its case in chief, the defense called Sherry Dean, E.C.'s mother. Sherry testified that the puppy incident, referred to by E.C., had occurred in Iowa in 1991, while she was married to her former husband, John Holden. She explained that she left the home after an argument. When she and the children returned, they found that Holden had hung some puppies in a tree, cut them open, and placed them on the kitchen counter. There was blood all over the kitchen. Sherry testified that she and the defendant moved into the apartment on Broadway in May of 1992.

Sherry denied that E.C. told her that the defendant had hurt or molested her. James C. also testified that E.C. never told him about being sexually abused or hurt by the defendant.

The defendant had waived his right to a jury trial. After considering the evidence, the trial court found the defendant guilty as charged. The trial court subsequently sentenced the defendant to 30 years' imprisonment.

The defendant appealed his conviction and sentence, which a majority of the appellate court affirmed. The majority rejected the defendant's argument that he is entitled to a new trial because E.C.'s testimony on closed circuit television was admitted pursuant to the Child Shield Act (725 ILCS 5/106B—1 (West 1992)), which was subsequently declared unconstitutional in *People v. Fitzpatrick*, 158 Ill. 2d 360 (1994). The majority recognized that the Child Shield Act was found to be unconstitutional in *Fitzpatrick* because it violated a defendant's state constitutional right to meet witnesses "face to face." Nevertheless, the majority noted that during the pendency of the defendant's appeal, the Illinois Constitution was amended and the Child Shield Act reenacted. Consequently, the majority determined that the reenacted Child Shield Act would allow for the admission of E.C.'s testimony by closed circuit television on retrial. The majority then reasoned that any error in admitting E.C.'s testimony in the first trial had been "cured by the subsequent legislative activity and rendered harmless beyond a reasonable doubt in this case."

A dissenting justice disagreed with the majority's conclusion that the subsequent amendment to the confrontation clause of the Illinois Constitution and reenactment of the Child Shield Act cured the error committed at the defendant's trial. He argued that retroactively applying the law as it now exists to the

defendant's case violates the state and federal constitutional prohibitions against *ex post facto* laws (Ill. Const. 1970, art. I, § 16; U.S. Const., art. I, §§ 9, 10).

## ANALYSIS

### I. Right to Confrontation

The defendant argues that he was deprived at trial of his constitutional right to a face-to-face confrontation with the victim, E.C., whom the trial court permitted to testify outside the defendant's presence by closed circuit television pursuant to the Child Shield Act (725 ILCS 5/106B—1 (West 1992)). The defendant contends that at the time he allegedly committed the offense, and at the time of his trial, section 8 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 8) expressly guaranteed a criminal defendant the right to confront witnesses face to face. In support of his argument, the defendant relies on this court's decision in *People v. Fitzpatrick*, 158 Ill. 2d 360 (1994). According to the defendant, the appellate court erred by failing to apply the *Fitzpatrick* decision to his case. The defendant therefore requests that we reverse the decision of the appellate court, reverse his conviction and grant him a new trial.

### A. *People v. Fitzpatrick*

The first issue before this court is whether our decision in *Fitzpatrick* should be applied to the defendant's case. In *Fitzpatrick*, the defendant was charged with seven counts of aggravated criminal sexual assault against four minors. The State moved pursuant to the Child Shield Act (Ill. Rev. Stat. 1991, ch. 38, par. 106B—1) for an order allowing the four minor victims to testify outside of the defendant's presence by closed circuit television. The Child Shield Act allowed child victims of certain enumerated sexual crimes to testify outside the courtroom by closed circuit television. Ill.

Rev. Stat. 1991, ch. 38, par. 106B—1(a)(1). Pursuant to the Act, a defendant remained in the courtroom but was able to communicate with his attorney, who was in the room where the child was testifying. Ill. Rev. Stat. 1991, ch. 38, pars. 106B—1(b)(2), (b)(3). The trial court in *Fitzpatrick* declared the Child Shield Act unconstitutional. On direct appeal, this court determined that the confrontation clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 8) unambiguously guaranteed a criminal defendant the right to meet a witness face to face. *Fitzpatrick*, 158 Ill. 2d at 365. In reaching this holding, the court distinguished the "face to face" language of the Illinois Constitution's confrontation clause (Ill. Const. 1970, art. I, § 8) from the "right to be confronted" language contained in the United States Constitution's confrontation clause (U.S. Const., amend. VI). *Fitzpatrick*, 158 Ill. 2d at 367. We found that a witness who is examined by closed circuit television does not provide the defendant with the face-to-face confrontation guaranteed by the plain language of the Illinois Constitution's confrontation clause. *Fitzpatrick*, 158 Ill. 2d at 367-68. Accordingly, this court declared the Child Shield Act to be unconstitutional because it violated the confrontation clause of the Illinois Constitution. *Fitzpatrick*, 158 Ill. 2d 360.

The defendant here contends that the appellate court erred by failing to apply this court's decision in *Fitzpatrick* to his case. Our *Fitzpatrick* opinion was filed on February 17, 1994, after the defendant was convicted and while his direct appeal was pending before the appellate court. We must therefore determine whether our decision in *Fitzpatrick* applies retroactively to the defendant's case.

The standard for applying judicial opinions retroactively was set forth in *People v. Erickson*, 117 Ill. 2d 271 (1987). In *Erickson*, this court held that judicial opinions

announcing new constitutional rules applicable to criminal cases are retroactive to all cases pending on direct review at the time the new constitutional rule is declared. *Erickson*, 117 Ill. 2d at 288, citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716 (1987). More specifically, retroactivity is triggered when two factors are present: (1) the case to which the new rule is to be applied was not final or was pending on direct review when the rule was declared, and (2) the rule to be applied retroactively is of constitutional dimension. *Erickson*, 117 Ill. 2d at 289; see also *People v. Gersch*, 135 Ill. 2d 384, 393 (1990); *People v. Shields*, 143 Ill. 2d 435, 442 (1991). Both of these factors are present in the instant case. The defendant's case was pending on direct review before the appellate court when this court rendered its decision in *Fitzpatrick*. Second, this court's ruling in *Fitzpatrick* is clearly a new rule of constitutional dimension. Although the 1970 Illinois Constitution's confrontation clause included the language "face to face," this court in *Fitzpatrick* first announced that a defendant was deprived of his right to confrontation when he was unable to confront witnesses face to face. Thus, pursuant to the above standard, we hold that the *Fitzpatrick* decision applies retroactively to the defendant's case.

Parenthetically, we note that *Fitzpatrick* should also be applied retroactively to cases pending on direct appeal given its determination that the Child Shield Act was unconstitutional. In *People v. Gersch*, 135 Ill. 2d 384 (1990), this court addressed whether a decision finding a statute unconstitutional should be applied retroactively to a case that was pending on direct review. We stated: "To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a

guaranteed right." *Gersch*, 135 Ill. 2d at 397. We agree with and adopt this rationale in the present case.

B. Constitutional Amendment

The State argues that the defendant is not entitled to the retroactive application of *Fitzpatrick* because that decision has "lost all force and effect." In making this argument, the State points to the following events which arose in response to our decision in *Fitzpatrick*.

Shortly after the filing of the *Fitzpatrick* opinion on February 17, 1994, the Illinois General Assembly proposed an amendment to the Illinois Constitution's confrontation clause. 1994 Ill. Laws 3148 (Senate Joint Resolution Constitutional Amendment 123). The proposed constitutional amendment deleted the "face to face" language from the confrontation clause and replaced it with language giving the accused the right "to be confronted with the witnesses against him or her." 1994 Ill. Laws 3148 (Senate Joint Resolution Constitutional Amendment 123). The legislative debates surrounding the proposed constitutional amendment indicate that the amendment was intended to reverse the effects of the *Fitzpatrick* decision and to change the language of the confrontation clause in the Illinois Constitution to conform with the language of the confrontation clause in the United States Constitution. 88th Ill. Gen. Assem., House Proceedings, April 20, 1994, at 51; 88th Ill. Gen. Assem., Senate Proceedings, April 14, 1994, at 101-02; 88th Ill. Gen. Assem., House Proceedings, November 30, 1994, at 52. On November 8, 1994, Illinois voters approved the constitutional amendment, thereby changing the language of section 8 of article I of the Illinois Constitution. Ill. Const. 1970, art. I, § 8, amended November 8, 1994; Illinois State Board of Elections, Official Vote Cast at the General Election on November 8, 1994, at vii (1994). The Illinois legislature then repealed the Child Shield Act invalidated in *Fitz-*

*patrick* (725 ILCS 5/106B—1 (repealed by Pub. Act 88—674, § 5, eff. December 14, 1994)) and reenacted it in reliance on the newly amended constitutional provision. 1994 Ill. Laws 2666; 88th Ill. Gen. Assem., Senate Proceedings, December 1, 1994, at 77. The reenacted statute applies to prosecutions pending on or commenced on or after December 14, 1994. 725 ILCS 5/106B—5 (West Supp. 1995). The reenacted Child Shield Act is substantially the same as the version declared unconstitutional in *Fitzpatrick*.[1] It allows young victims of certain listed sexual crimes to testify by closed circuit television outside the presence of the defendant. 725 ILCS 5/106B—5 (West Supp. 1995). All of these aforementioned events occurred while the defendant's case was pending on appeal before the appellate court.

In view of the preceding circumstances, the State insists that *Fitzpatrick* has been "legislatively overruled or superseded," such that it is no longer controlling precedent. According to the State, *Fitzpatrick* should not be applied retroactively to the defendant's case because it is an invalid decision given its reliance on the former language of section 8 of article I. The State asserts that the appellate court properly utilized the constitutional amendment and the reenacted Child Shield Act to cure any error that may have arisen at the defendant's trial.

We cannot agree with the State's position. In essence, the State is arguing that the constitutional amendment to the Illinois Constitution's confrontation clause be applied retroactively to the defendant's case. It is well established, however, that a constitutional provision or amendment operates prospectively from its ef-

---

[1]The only change was in Public Act 89—428, which inserted into the introductory paragraph of subsection (a) of the Child Shield Act the following language: "predatory criminal sexual assault of a child." 1995 Ill. Laws 4508.

fective date unless its language clearly indicates an intent to apply the provision or amendment retroactively. See *Shreveport v. Cole*, 129 U.S. 36, 43, 32 L. Ed. 589, 591-92, 9 S. Ct. 210, 213 (1889); *People ex rel. Kutner v. Cullerton*, 58 Ill. 2d 266, 270 (1974), citing *City of Chicago v. Rumsey*, 87 Ill. 348, 357 (1877); accord *State v. Lavazzoli*, 434 So. 2d 321, 323 (Fla. 1983); *State v. Cousan*, 1996 La. Lexis 3233 (La. November 25, 1996); *Succession of Fragala*, 680 So. 2d 1345, 1348 (La. App. 1996); *People v. Gornbein*, 407 Mich. 330, 332, 285 N.W.2d 41, 43 (1979); *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 643 (Miss. 1991); *Kayden Industries, Inc. v. Murphy*, 34 Wis. 2d 718, 731, 150 N.W.2d 447, 453 (1967); 16 C.J.S. *Constitutional Law* § 36 (1984); 16 Am. Jur. 2d *Constitutional Law* § 65 (1979). This principle recognizes that a constitutional amendment may have a retroactive effect only "if such an intention is clearly expressed in the constitution." See *Cullerton*, 58 Ill. 2d at 270. No such intent was expressed in the constitutional amendment at issue here.

Section 8 of article I, as amended in 1994, states that the accused in criminal prosecutions "shall have the right *** to be confronted with the witnesses against him or her." Ill. Const. 1970, art. I, § 8, amended November 8, 1994. This language does not clearly indicate an intention to apply retroactively the amended constitutional right to confrontation. Moreover, the schedule contained in the 1994 constitutional amendment proposed by the General Assembly does not indicate that a retroactive application was intended. The schedule contained in that resolution stated as follows: "This Constitutional Amendment takes effect upon approval by the electors of this State," which date was November 8, 1994. 1994 Ill. Laws 3148 (Senate Joint Resolution Constitutional Amendment 123). As further support for our finding that there was no intent to ap-

ply the constitutional amendment retroactively, we look to the form of ballot used in the November 1994 election to explain the proposed amendment to the voters. The form of ballot read: "This proposed amendment changes Article I, Section 8 of the Illinois Constitution regarding the rights of the accused in a criminal prosecution by replacing language giving the accused the right 'to meet the witnesses face to face' with language giving the accused the right ' "to be confronted with the witnesses against him or her." ' " 1994 Ill. Laws 3096 (Senate Joint Resolution 181); George H. Ryan, Secretary of State, State of Illinois, Proposed Amendments to the Constitution of Illinois That Will Be Submitted to the Voters November 8, 1994, at 5 (1994). The express language on the ballot thus did not express an intent to apply the constitutional amendment retroactively. Based on our examination of the foregoing provisions, we find no indication that the constitutional amendment which altered the scope of the right to confrontation was intended to apply retroactively. We therefore hold that this constitutional amendment has prospective application only and cannot be applied retroactively to the defendant's case. Accordingly, the defendant, who had a right to confrontation at trial and whose trial had been completed, cannot be deprived retroactively of his right to a "face to face" confrontation.

We further note that fundamental fairness and justice dictate that the constitutional amendment to section 8 of article I not apply retroactively to the defendant's case. At the time of the defendant's trial, the Illinois Constitution conferred on him an express and unqualified right to "face to face" confrontation. When we held the Child Shield Act unconstitutional in *Fitzpatrick*, we declared that the procedure allowed by that statute violated this constitutional right. Because the procedure found to be unconstitutional in *Fitz-*

*patrick* was also employed during the defendant's trial, his then-existing constitutional right was violated. The State argues that the subsequent amendment to the constitution can be applied retroactively to cure this error. The fortuity of circumstances on which the State now relies, however, cannot validate retroactively what was undeniably an unconstitutional trial procedure when it occurred. The defendant is entitled to a trial which vindicates his constitutional right to "face to face" confrontation. We therefore find that retroactive application of this constitutional amendment to the defendant's case would result in manifest injustice because the defendant would be deprived of a fundamental constitutional right which was guaranteed to him at the time of his trial.

Based on the foregoing analysis, we hold that the amendment to section 8 of article I of the Illinois Constitution, effective November 8, 1994, and the subsequently reenacted Child Shield Act do not apply retroactively to the defendant's case. Consequently, at the time of his trial, the defendant was entitled to meet witnesses face to face. *Fitzpatrick*, 158 Ill. 2d 360. The defendant was deprived of that constitutional right when the victim, E.C., testified by closed circuit television. Moreover, we conclude that the appellate court erred in applying the constitutional amendment and reenacted Child Shield Act retroactively to cure the error of admitting E.C.'s testimony via closed circuit television.

II. Harmless Error

Having determined that the defendant was deprived in his trial of his constitutional right to "face to face" confrontation, we next address whether that error was harmless. The appellate court disposed of this case on the basis that the constitutional error committed at trial had been rendered harmless by "subsequent legislative activity." We reject this rationale because it does not

conform to the standard for determining whether a constitutional error is harmless. A constitutional error can be deemed harmless error only if it is proven beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *People v. Childs*, 159 Ill. 2d 217, 228 (1994), citing *Chapman v. California*, 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 827-28 (1967); *Shields*, 143 Ill. 2d at 446; *People v. Coleman*, 129 Ill. 2d 321, 341 (1989); *People v. Johnson*, 116 Ill. 2d 13, 28 (1987). Essentially, then, the issue is whether the defendant would have been convicted regardless of the error.

With this principle in mind, we examine whether E.C.'s testimony via closed circuit television contributed to the defendant's conviction. The State contends that the confrontation error is harmless because even in the absence of E.C.'s testimony, the defendant would have been convicted based on independent credible evidence of the defendant's guilt presented at trial. We disagree. First, we point out that in announcing the guilty finding, the trial judge, who acted as the finder of fact, stated that the "bottom line" in finding the defendant guilty was that he believed E.C.'s testimony. More specifically, the trial judge stated:

> "The only direct evidence in this case as to the offense charged comes from [E.C.], the victim, a five year old female child. Most of the evidence that has been presented to me in this case has to do with whether or not I should believe what [E.C.] has told me, and that is really the bottom line in this case. *** I believe [E.C.], and that is the bottom line."

These comments demonstrate that the trial judge relied heavily on E.C.'s testimony in finding the defendant guilty.

The record also reveals that E.C. likely would not have testified without the use of closed circuit television. The State was unsuccessful on two occasions when

it attempted to elicit testimony from E.C. in the defendant's presence. Given the importance of E.C.'s testimony and the fact that the trial judge placed great weight on it in reaching his decision to convict the defendant, we cannot conclude beyond a reasonable doubt that the defendant would have been convicted without E.C.'s testimony. We therefore find that the error in admitting E.C.'s testimony by closed circuit television contributed to the trial judge's decision to convict the defendant. The error therefore was not harmless beyond a reasonable doubt. Accordingly, we hold that the defendant's conviction must be reversed and the cause remanded to the circuit court for a new trial.

### III. Remand

We must next consider what law will apply on remand. On remand, the defendant claims that fundamental fairness requires that he retain his right to face-to-face confrontation as it existed at his first trial. The defendant relies on *People v. Reddick*, 123 Ill. 2d 184 (1988), in support of his argument. In *Reddick*, the defendant was granted a new trial because the jury received improper instructions regarding the burden of proof. In addressing additional trial errors, this court considered the defendant's claim that the trial court erred in preventing the defendant from impeaching a prosecution witness with evidence of a prior felony conviction. The trial court excluded the impeachment evidence pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971), which held that a witness cannot be impeached by a prior conviction if more than 10 years have elapsed since the date of the witness' conviction or the date of the witness' release from confinement, whichever is later. *Reddick*, 123 Ill. 2d at 202-03. The trial court in *Reddick*, however, miscalculated whether 10 years had elapsed and thus erroneously applied the *Montgomery* rule to exclude the prior conviction. *Red-*

*dick*, 123 Ill. 2d at 202. This court determined that the defendant's initial trial was held within 10 years of the prosecution witness' release from prison for the conviction. *Reddick*, 123 Ill. 2d at 203. Consequently, the *Montgomery* rule did not bar admission of the prior conviction for impeachment purposes at that trial. Nevertheless, this court noted that, under this rule, on retrial the prosecution witness' prior conviction will not be admissible for impeachment because the 10-year limit set forth in *Montgomery* will have lapsed. As a result, this court refused to apply the 10-year provision of the *Montgomery* rule on remand to exclude the evidence. We held that fundamental fairness required that the defendant be allowed to impeach the witness in his new trial in the same manner that the defendant should have been permitted to impeach him at the initial trial. *Reddick*, 123 Ill. 2d at 203.

Here, the defendant argues that a similar principle of fairness dictates that his retrial be conducted pursuant to the face-to-face confrontation clause as it should have been applied at his first trial. We agree and hold that fundamental fairness requires that the defendant be allowed to confront witnesses face to face at his retrial. This result seems particularly just given that the defendant was deprived of a fundamental constitutional guarantee at his first trial.

As a final matter, we note that double jeopardy principles do not bar the State from proceeding against the defendant in a new trial. After thoroughly reviewing the evidence, we find it to have been sufficient to support the defendant's conviction. As such, there is no impediment to a new trial. See *People v. Hope*, 116 Ill. 2d 265, 279 (1986); *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). We, however, in no manner imply that we have made a finding as to the defendant's guilt that would be binding on retrial. *People v. McDonald*, 125 Ill. 2d 182, 202 (1988).

## CONCLUSION

For the reasons stated above, we reverse the judgments of the appellate and circuit courts. We therefore reverse the defendant's conviction and remand for a new trial consistent with the views expressed in this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded with directions.*