# Illinois Official Reports

## Appellate Court

---

### *In re T.Z.*, 2017 IL App (4th) 170545

---

| | |
|---|---|
| Appellate Court Caption | *In re* T.Z., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. T.Z., Respondent-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-17-0545 |
| Filed | December 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 17-JD-23; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Joel C. Wessol, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Thomas R. Dodegge, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Presiding Justice Turner and Justice Harris concurred in the judgment and opinion. |

¶ 1 Respondent, T.Z. (born January 5, 2002), appeals from the trial court's orders adjudicating him delinquent and committing him to the custody of the Illinois Department of Juvenile Justice (DOJJ). On appeal, respondent argues (1) his right to confrontation was violated at his adjudicatory hearing by the manner in which the trial court permitted a child witness to testify, (2) his trial counsel operated under a conflict of interest at his dispositional hearing when she advocated for his best interests, and (3) he was improperly assessed a $50 court finance fee. We reverse and remand for a new adjudicatory hearing and, if necessary, a new dispositional hearing.

¶ 2 I. BACKGROUND

¶ 3 A. Petition for Adjudication of Delinquency and Wardship

¶ 4 On February 15, 2017, the State filed a petition for adjudication of delinquency and wardship, alleging respondent committed the offenses of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2016)) (count I) and criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2016)) (count II) against T.W., his seven-year-old nephew. In both counts, the State alleged respondent, "[o]n or about June[ ] 2016 and January 1, 2017, *** placed his penis in [T.W.'s] mouth."

¶ 5 B. Respondent's Motion for the Appointment of a Guardian *Ad Litem*

¶ 6 On February 21, 2017, respondent filed a motion for the appointment of a guardian *ad litem* (GAL). Following a March 3, 2017, hearing, the trial court granted respondent's motion and appointed a GAL.

¶ 7 C. Adjudicatory Hearing

¶ 8 On March 30, 2017, the trial court held an adjudicatory hearing. The State elicited testimony from T.W.'s mother, Jessica Y., and T.W. Respondent testified on his own behalf. No other evidence was presented.

¶ 9 Jessica Y. testified that during the period from June 2016 through January 1, 2017, T.W. stayed the night at her mother's home approximately once every two weeks, where respondent, Jessica Y.'s younger brother, also resided. Jessica Y. testified that on an occasion in the fall of 2016, T.W. stayed the night at her neighbor's home, where respondent was also staying the night. According to Jessica Y., sometime in the fall of 2016, T.W. reported respondent "did adult things." However, Jessica Y. testified, T.W. "didn't say whether [respondent] touched him or anything." Jessica Y. spoke with respondent, who "denied it." She then told family members she did not want T.W. and respondent alone together. Jessica Y. continued to allow T.W. to stay the night at her mother's home after her conversation with T.W.

¶ 10 Seven-year-old T.W. "promise[d]" to tell the truth. He testified in open court as to his age, schooling, living situation, and familial relationship with respondent. T.W. also identified respondent as being present in the courtroom. T.W. testified he recalled an occasion when he stayed the night at his neighbor's home, where respondent was also staying the night. The following examination then occurred:

"[STATE]: Did something happen with you and [respondent]?

[T.W.]: Yes.

[STATE]: Can you tell the judge what happened?

THE COURT: Go ahead

([T.W.] whispers to [t]he [c]ourt.)

THE COURT: Do you want me to say what you just said or can you say it?

[T.W.]: You.

THE COURT: You want me to say that he touched you in your privates? Is that what you told me?

[T.W.]: Yes.

THE COURT: Okay.

[STATE]: Were there other times when you slept over at Grandma's house?

[T.W.]: Uh, I lived there, but—

[STATE]: You lived at Grandma's house?

[T.W.]:—we would do it about every day.

[STATE]: Okay. Were there some times when [respondent] would be over at Grandma's house too?

[T.W.]: He would always be there.

[STATE]: And what do you call the part of your body that you pee with?

[T.W.]: My private.

[STATE]: Your private. Was there anything that [respondent] did with his private to you? Do you want to tell the judge?

[T.W.]: (Nods head.)

[STATE]: Yeah?

([T.W.] whispers to the [c]ourt.)

THE COURT: He said he put his private in his butthole.

[STATE]: Did he do anything with his private in your mouth?

[T.W.]: (Nods head.)

[STATE]: You nodded your head. Does that mean yes?

[T.W.]: Uh-huh.

[STATE]: Okay. Did anything happen with his private when he put it in your mouth?

([T.W.] whispers to [t]he [c]ourt.)

[DEFENSE COUNSEL]: Your Honor, if we may approach?

THE COURT: Not yet.

Go ahead.

He said I would choke.

[STATE]: Did that happen more than one time?

[T.W.]: Yes."

¶ 11    On cross-examination, respondent's counsel inquired into who was present at the neighbor's home when the described events occurred, to which T.W. explained his neighbor, his neighbor's boyfriend, and a friend of his neighbor's boyfriend. Counsel also inquired into who was present at his grandmother's home, to which T.W. explained his grandmother, great-grandmother, mother, and "Courtney." Lastly, counsel inquired into what rooms the described events occurred, to which T.W. stated: "Closets and that home when [respondent] said to tell Grandma that he was—he just wanted to sleep for another five minutes."

¶ 12    Respondent testified (1) he never touched T.W., (2) T.W. never touched him, and (3) he never showed T.W. his "private parts." On cross-examination, respondent acknowledged watching pornography on his phone but denied showing it to T.W.

¶ 13    The trial court found the State proved beyond a reasonable doubt both counts of its petition and adjudicated respondent delinquent. In the oral pronouncement of its decision, the court stated:

> "Well the issue before the court is one of credibility. [T.W.], a seven year old, came into court, and when asked most of the questions, answered them clearly and concisely. When asked specific questions about what [respondent] did to him, he—[the State] said, 'Do you want to tell the judge?' So he whispered in my ear what the answers to [the State's] questions, which I repeated verbatim immediately after he whispered in my ear. So it's a question of credibility. [T.W.'s] testimony, his description of what happened, is credible, and again as [the State] indicates, for someone who's seven years of age, these are things that he should not have experienced, and his description of what happened is very credible. I find that the State has proven beyond a reasonable doubt both counts of the petition."

### D. Postadjudicatory Motion

¶ 15    On April 28, 2017, respondent filed a motion for an acquittal or, in the alternative, a new trial. Respondent argued, in part, as follows:

> "[The trial court] erred in allowing [T.W.] to whisper answers to questions posed by the [S]tate into the Judge's ear and the Judge repeating the answers in open court. Defense counsel asked for a side bar to address this issue and was told by the Judge 'not yet' and the witness was allowed to continue answering his questions in this manner."

¶ 16    On May 22, 2017, the trial court held a hearing on respondent's postadjudicatory motion. Respondent stood on the arguments contained in his motion. The State objected to the motion, asserting, in part, "the way the [c]ourt heard [the evidence] was absolutely appropriate." The court denied respondent's motion.

### E. Dispositional Hearing

¶ 18    On May 23, 2017, the trial court held a dispositional hearing. The State recommended, and the GAL agreed to, an interim commitment to the DOJJ with a review hearing to consider residential treatment. In providing respondent's recommendation, respondent's counsel initially stated:

> "I would actually be asking for probation. That is what [respondent] wants, so that's what I'm going to be asking for."

Following counsel's statement, the court inquired as to where respondent would be placed if he was released on probation, noting respondent was unable to be placed with his brother because a child was expected in that household in the near future. Respondent's counsel stated:

> "[M]y recommendation would be to go with [respondent's brother] for a temporary basis so that we can work out what [the State] had said about getting him into a residential facility. My recommendation would be for him to be put on probation, able to go with his brother and then still work on getting him that residential treatment if that's something that I believe that he does need. He does need treatment as evaluated by both of the reports that we have. But that would be my recommendation."

After considering the recommendations, the court adjudicated respondent a ward of the court, committed him to the DOJJ for an interim period, and set a review hearing to consider residential treatment. The record shows respondent was also assessed a $50 court finance fee.

¶ 19                          F. Motion To Reconsider Sentence

¶ 20    On May 24, 2017, respondent filed a motion to reconsider his sentence. Respondent argued that the sentence imposed was excessive and requested a term of probation. Following a July 25, 2017, hearing, the trial court denied respondent's motion, finding commitment was, and continued to be, appropriate.

¶ 21    This appeal followed.

¶ 22                          II. ANALYSIS

¶ 23    On appeal, respondent argues (1) his right to confrontation was violated at his adjudicatory hearing by the manner in which the trial court permitted T.W. to testify, (2) his trial counsel operated under a conflict of interest at his dispositional hearing when she advocated for his best interests, and (3) he was improperly assessed a $50 court finance fee.

¶ 24    Respondent asserts his right to confrontation was violated at his adjudicatory hearing by the manner in which the trial court permitted T.W. to testify. Specifically, respondent complains of the manner in which T.W. was allowed to answer questions by whispering answers to the court to be repeated by the court for the record. Respondent maintains he preserved this issue for review and the State cannot show beyond a reasonable doubt that the error did not contribute to his adjudication of delinquency. Alternatively, in the event this court finds he failed to preserve this issue for review, respondent requests we review his claim for plain error and as a claim of ineffective assistance of counsel.

¶ 25    At an adjudicatory hearing, a minor is required to object to an alleged error to preserve its review for appeal. *In re Samantha V.*, 234 Ill. 2d 359, 368, 917 N.E.2d 487, 493 (2009); *In re Ronald J.*, 2017 IL App (4th) 160855, ¶ 22, 74 N.E.3d 1178. Here, it is undisputed respondent did not object to the manner in which T.W. was permitted to testify. Respondent suggests his request for a sidebar served as the functional equivalent of an objection because the trial court "almost assuredly understood" he was attempting to address the manner in which T.W. was testifying. As the State contends, respondent's suggestion amounts to pure speculation. Respondent further failed to provide the court with any legal basis to support his

supposed objection or obtain a ruling on that objection. We find respondent has forfeited his contention of error.

¶ 26    Respondent requests we review his claim for plain error. Under the first prong of the plain-error doctrine, a reviewing court may exercise its discretion and excuse a defendant's forfeiture where it is shown (1) " 'a clear or obvious error occurred' " and (2) " 'the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error.' " *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410 (2007)).

¶ 27    We begin our analysis with whether the trial court committed a clear or obvious error. The confrontation clause of the sixth amendment of the United States Constitution, made applicable to the states through the fourteenth amendment (U.S. Const., amend. XIV), provides, in part, as follows: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. Conforming with the confrontation clause of the United States Constitution, the confrontation clause of article I, section 8, of the Illinois Constitution provides in part as follows: "In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her." Ill. Const. 1970, art. I, § 8; see generally *People v. Dean*, 175 Ill. 2d 244, 254-55, 677 N.E.2d 947, 952 (1997) (discussing the 1994 amendment to the Illinois Constitution's confrontation clause). The right to confront witnesses is equally applicable in juvenile delinquency proceedings. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201-02, 909 N.E.2d 783, 796 (2009).

¶ 28    In *Coy v. Iowa*, 487 U.S. 1012 (1988), the United States Supreme Court was tasked with considering the constitutionality of a courtroom procedure designed to prevent a child witness from having to face in open court a defendant charged with sexually assaulting the child. In that case, the trial court followed a state statutory procedure allowing child witnesses to testify from behind a large screen which, after making certain lighting adjustments in the courtroom, enabled the defendant dimly to perceive the child witnesses but prevented the child witnesses from seeing the defendant. *Id.* at 1014-15. The Supreme Court found the procedure violated the defendant's right to confrontation as it precluded face-to-face confrontation. *Id.* at 1020. In reaching its decision, however, the court "le[ft] for another day" the question of whether any exceptions existed to the requirement of face-to-face confrontation. *Id.* at 1021. In doing so, it noted, to the extent said exceptions did exist, "they would surely be allowed only when necessary to further an important public policy." *Id.* The Court rejected the State's suggestion such a necessity was established by the state statute, which created "a legislatively imposed presumption of trauma." *Id.* The Court concluded, absent "individualized findings that [the] particular witnesses needed special protection, the judgment *** could not be sustained by any conceivable exception." *Id.*

¶ 29    Two years later, in *Maryland v. Craig*, 497 U.S. 836, 841 (1990), the United States Supreme Court answered the question reserved in *Coy*, that is, whether any exceptions existed to the requirement of face-to-face confrontation. In that case, the trial court followed a state statutory procedure to allow a child witness to testify by means of a one-way closed-circuit television. Unlike *Coy*, the trial court, in accordance with the state statute, utilized the unique procedure only after it made a finding that the child witness would suffer severe emotional distress if required to testify in open court. For this reason, the Supreme Court addressed the question reserved in *Coy*. *Id.* at 845. The Court found, while the

- 6 -

confrontation clause reflected "a preference for face-to-face confrontation at trial," (emphasis omitted) that preference "must occasionally give way to considerations of public policy and the necessities of the case." (Internal quotation marks omitted.) *Id.* at 849-50. In reviewing the statutory procedure utilized by the trial court, the Supreme Court found the defendant's right to confrontation was not violated because the statutory procedure (1) preserved the other elements of confrontation, including the ability of the judge, jury, and the defendant to view the witness while testifying; (2) furthered the State's stated interest in the physical and psychological well-being of child abuse victims; and (3) was relied upon only after a case-specific showing of necessity. *Id.* at 851-56.

¶ 30    In *People v. Lofton*, 194 Ill. 2d 40, 740 N.E.2d 782 (2000), the Illinois Supreme Court addressed the constitutionality of a courtroom procedure designed to prevent a child witness from having to face in open court a defendant charged with sexually assaulting the child. However, unlike the statutory procedures followed in *Coy* and *Craig*, the trial court in *Lofton* implemented an *ad hoc* procedure to allow the child witness to testify from behind a barrier of podiums, which precluded the defendant from being able to view the child when testifying. *Id.* at 47, 49, 740 N.E.2d at 787-88. Our supreme court found the procedure violated the defendant's right to confrontation as it fell "far outside the narrow and limited exception created by *Craig*." *Id.* at 59, 740 N.E.2d at 794. The court noted "[t]he right to confront witnesses includes the right to hear and to view them as they testify." *Id.* at 60, 740 N.E.2d at 794. The court found "the defendant's inability to observe the manner of the witness while testifying could have prejudiced him by limiting his ability to suggest lines of examination to his attorney that might have been indispensable to effective cross-examination." *Id.* The court noted that our legislature enacted a statute allowing the use of one-way, closed-circuit televisions similar to the statute in *Craig*, which would have allowed child witnesses to "testify under the watchful eyes of the parties and the fact finder." (Internal quotation marks omitted.) *Id.* at 59-60, 740 N.E.2d at 794 (citing 725 ILCS 5/106B-5 (West 1996)). The court concluded: "The novel arrangement devised by the trial court, authorized neither by statute nor by common law, failed to ensure the reliability of the evidence by subjecting it to rigorous adversarial testing and, thus, failed to preserve the essence of effective confrontation." *Id.* at 61, 740 N.E.2d at 794.

¶ 31    Respondent asserts, like *Lofton*, his right to confrontation was violated where the trial court's procedure, authorized neither by statute nor common law, prevented both he and his trial counsel from hearing T.W. testify, which limited his options on cross-examination and closing argument. The State disagrees, contending (1) a considerable difference exists between blocking the view of a witness by podiums and allowing a witness to whisper answers to the court to be repeated by the court for the record; (2) T.W.'s testimony was sufficiently reliable and subject to adversarial testing as T.W. testified under oath, was subject to cross-examination, and "testified in respondent's presence"; and (3) the procedure here provided greater assurances of reliability than the admission of hearsay statements, which has been found not to violate a defendant's right to confrontation.

¶ 32    Like *Lofton*, the trial court, with support from the State, implemented an *ad hoc* courtroom procedure to receive T.W.'s testimony. The court's procedure of permitting T.W. to answer questions by whispering answers to be repeated by the court for the record precluded both respondent and his counsel from listening to T.W.'s answers and the manner in which he testified. As this court stated in *People v. Hadden*, 2015 IL App (4th) 140226,

¶ 28, 44 N.E.3d 681, "[s]poken language contains more communicative information than the mere words because spoken language contains 'paralanguage'—that is, the 'vocal signs perceptible to the human ear that are not actual words' " (quoting Keith A. Gorgos, *Lost in Transcription: Why the Video Record Is Actually Verbatim*, 57 Buff. L. Rev. 1057, 1107 (2009)). The inability to hear T.W. answer questions limited possible lines of inquiry that might have been indispensable to effective cross-examination. See *Craig*, 497 U.S. at 845 ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."). We find, as respondent asserts, listening to the manner in which a witness testifies is as vital as observing the manner in which the witness testifies. See *Lofton*, 194 Ill. 2d at 60, 740 N.E.2d at 794 ("The right to confront witnesses includes the right to hear *** them as they testify."). We also note, prior to implementing such a procedure, the court made no case-specific finding of necessity on the record. See *Coy*, 487 U.S. at 1021 (finding the judgment could not be sustained absent an individual finding indicating the child witness needed special protection); *Craig*, 497 U.S. at 856 ("The trial court must *** find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant."). We find the *ad hoc* courtroom procedure used by the trial court was a clear and obvious violation of respondent's right to confrontation.

¶ 33    Having determined a clear and obvious error occurred, we next address whether respondent "has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Sebby*, 2017 IL 119445, ¶ 51. In making this determination, we "must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. This inquiry "involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 34    In its petition for adjudication of delinquency and wardship, the State alleged respondent committed the offenses of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2016)) and criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2016)) by "plac[ing] his penis in [T.W.'s] mouth." T.W.'s testimony relating to the charged conduct is as follows:

> "[STATE]: Did he do anything with his private in your mouth?
>
> [T.W.]: (Nods head.)
>
> [STATE]: You nodded your head. Does that mean yes?
>
> [T.W.]: Uh-huh."

The State asserts the evidence is not closely balanced based on the above nonverbal responses as well as T.W.'s whispering of a detail a seven-year-old child would not make up—stating he would choke when respondent's penis was placed in his mouth.

¶ 35    The trial court was presented with opposing versions of events with no extrinsic evidence to corroborate or contradict either version. The outcome turned on how the court, as the trier of fact, resolved a contest of credibility. As indicated, the error in the court's courtroom procedure precluded respondent from the opportunity to hear T.W.'s testimony to determine whether his answers should be subject to cross-examination. This error directly impacted respondent's ability to contest the credibility of the complaining witness. The error is

particularly prejudicial here, where the trial court made clear in the oral pronouncement of its decision that (1) "the issue before the court [was] one of credibility" and (2) it relied on the answers whispered by T.W. in reaching its credibility determination. In addition, the trial judge is not sworn, as an interpreter would be, and cannot serve as a witness as well as a fact finder. In our assessment, we find the evidence is closely balanced.

¶ 36   Because respondent has shown clear and obvious error and the evidence is closely balanced, he is entitled to relief under the first prong of the plain-error doctrine. *Sebby*, 2017 IL 119445, ¶ 64. Accordingly, we need not entertain respondent's other contentions of error on appeal.

¶ 37                              III. CONCLUSION

¶ 38   We reverse and remand for a new adjudicatory hearing before a different judge and, if necessary, a new dispositional hearing.

¶ 39   Reversed and remanded.