THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAVIER VAZQUEZ, Defendant-Appellant.

First District (5th Division)   No. 1—99—0930

Opinion filed August 11, 2000, *nunc pro tunc* June 30, 2000.

George S. Pfeifer, of Evanston, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Jackie Marie Portman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant Javier Vazquez was convicted of

aggravated battery with a firearm and two counts of aggravated battery and sentenced to a term of eight years in prison. On appeal, defendant contends that the State failed to prove his guilt beyond a reasonable doubt and that his sentence was excessive. Defendant also argues that the statute pertaining to aggravated battery with a firearm violates the single subject rule of the Illinois Constitution.

At trial, Maceo Bedar testified that at about 10 p.m. on January 12, 1998, he was walking home from a store on Albion Avenue when he saw a tan car with two "For Sale" signs inside the vehicle. The car slowed and stopped about 10 feet from Bedar, who asked the driver how much the car would cost. Bedar said he was far enough away from the car that he could see the driver without having to bend down and look through the driver's window. Bedar was not holding anything in his hands at the time.

Bedar then saw the passenger, whom he identified in court as defendant, reach across the driver and point a gun at him. Bedar lifted his right arm in front of his face. Defendant fired five shots, three of which hit Bedar. One shot struck Bedar in the right hand, with another in the right forearm and another going through Bedar's jacket. Bedar later identified defendant to police.

On cross-examination, Bedar stated that he was a member of the Black P Stones gang at the time of the shooting. Bedar said he did not reach for anything or move his hands prior to being shot. Bedar did not hear defendant or the driver speak to him before he was shot. Bedar said he was no closer to the car than five or six feet.

Eugene Borowski testified that he lived near the intersection of Bosworth and Albion Avenues on the night in question. At about 10 p.m., Borowski was walking on Albion Avenue when he heard "loud talking" and saw a man standing on the street and also saw a man that he identified in court as defendant in the passenger seat of a car. Borowski said defendant fired three shots and hit the man outside the car, who was four or five feet away from the car. Borowski heard five shots fired in total.

Chicago police officer Joseph Lobianco testified that he and his partner pursued defendant's car after hearing a police radio report. A revolver was recovered from the passenger seat, and it was later determined that the gun was loaded and had five spent rounds.

Cook County Assistant State's Attorney Athena Farmakis testified that defendant told her that Bedar approached the driver's side of the car and defendant leaned across the driver and shot Bedar three times. Defendant said Bedar had kicked the car a few times and he thought Bedar wanted to rob them. On cross-examination, Farmakis testified that defendant did not tell her that he fired the gun into the air. The

parties stipulated that Chicago police detective Tony Villardita would testify that defendant told him that he aimed the gun in the air in an attempt to scare Bedar.

Defendant testified that, on the night in question, he came out of a liquor store at Clark Street and Albion Avenue when Bedar pushed him and demanded money. Defendant refused and walked toward his friend's car, and Bedar followed him. Defendant said Bedar continued to ask him for money and that Bedar kicked the car two or three times. Defendant said Bedar put his hand inside his jacket and defendant thought Bedar was going to pull out a gun. Defendant fired his gun four times to scare Bedar and the gun was "pointed up" because he did not intend to hurt Bedar. Defendant said he told Farmakis that Bedar had tried to rob him. The defense rested.

In rebuttal, the parties stipulated that Farmakis would testify that defendant did not tell her of a robbery attempt by Bedar. The circuit court found that defendant was unjustified in firing at Bedar and, as previously stated, found him guilty of aggravated battery with a firearm and two counts of aggravated battery. The court sentenced defendant to a term of eight years in prison.

## I

On appeal, defendant first contends that the State failed to prove his guilt beyond a reasonable doubt. Defendant argues that the State did not prove that he knowingly caused harm to Bedar and also argues that Bedar's testimony lacked credibility.

■ A reviewing court must determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Gilliam*, 172 Ill. 2d 484, 515 (1996). It is the prerogative of the trier of fact to accept or reject as much of a witness' testimony as it chooses and to draw reasonable inferences from that testimony. *People v. Kosyla*, 129 Ill. App. 3d 685, 701 (1984).

■ Pursuant to section 12—4(a) of the Criminal Code of 1961, a defendant commits aggravated battery if he or she intentionally or knowingly causes great bodily harm. 720 ILCS 5/12—4(a) (West 1998). A person acts knowingly if he is consciously aware that his conduct is practically certain to cause great bodily harm. *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067 (1992). Defendant contends that he acted recklessly, but not knowingly, in firing the gun. Based on the testimony presented, however, the circuit court reasonably could conclude defendant acted with knowledge that Bedar would be harmed. The court was free to give little weight to defendant's testimony that he fired into the air. See *Kosyla*, 129 Ill. App. 3d at 701.

■ Defendant argues that he fired the gun into the air and that the shots struck Bedar because Bedar was standing close to the car, "possibly touching" it, and that Bedar "probably had his hands at some point on the roof of the car." The record contains no evidence to that effect, however. Instead, the State presented testimony by Borowski, an eyewitness, who corroborated Bedar's account that he was standing four to five feet from the car. The circuit court was free to find the testimony of Bedar and Borowski more credible than that of defendant; that determination will not be disturbed on appeal. The State proved defendant's guilt beyond a reasonable doubt.

## II

■ Defendant next asserts that his eight-year sentence was excessive in light of the mitigation evidence. A court is vested with wide discretion in imposing a sentence and, if the sentence is within statutory limits, a reviewing court will not reverse absent an abuse of discretion. *People v. Kyles*, 303 Ill. App. 3d 338, 354 (1998). The weight to be accorded each factor in aggravation and mitigation, and the resulting balance to be struck among them, depends upon the circumstances of the case. *People v. Grisset*, 288 Ill. App. 3d 620, 635-36 (1997).

Defendant was convicted of aggravated battery with a firearm and two counts of aggravated battery, and sentenced to a term of eight years in prison. Under section 5—8—1(a)(3) of the Unified Code of Corrections, the sentencing range for defendant's crime is 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 1998). Defendant's sentence, therefore, was only two years more than the lowest end of the statutory range. Moreover, the record indicates that the circuit court expressly considered defendant's potential for rehabilitation. It is presumed that a court's sentencing decision is based upon proper legal reasoning and in consideration of all evidence in mitigation. *People v. Hughes*, 259 Ill. App. 3d 172, 179 (1994). The record shows no abuse of discretion.

■ Defendant also contends that Public Act 86—980 (Pub. Act 86—980, eff. July 1, 1990), which created the offense of aggravated battery with a firearm, violates the single subject rule of the Illinois Constitution. Article IV, section 8, of the Illinois Constitution provides that bills should be confined to one subject in order to prevent the passage of legislation that, standing alone, may not muster the votes necessary for enactment. Ill. Const. 1970, art. IV, § 8; see *People v. Reedy*, 186 Ill. 2d 1, 13 (1999) (*Reedy*). The supreme court has stated that the single subject requirement also "facilitates the enactment of bills through an orderly and informed legislative process, in that '[b]y

limiting each bill to a single subject, each legislator can better understand and more intelligently debate the issues presented by a bill.' " *People v. Cervantes*, 189 Ill. 2d 80, 83-84 (1999), quoting *Reedy*, 186 Ill. 2d at 14.

In determining whether legislation violates the single subject rule, the term "subject" is liberally construed in favor of upholding the validity of the legislation, and therefore the subject may be as comprehensive as the legislature chooses. *Cervantes*, 189 Ill. 2d at 84. The matters included within any one enactment must have a "natural and logical connection" to a single subject. *Reedy*, 186 Ill. 2d at 9. As the supreme court recently reiterated in *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101 (2000) (*Chavez*), this "natural and logical connection" test does not require that the various provisions within an enactment be related to each other, but merely must relate to a single subject. *Chavez*, 191 Ill. 2d at 112.

The enactment at issue is Public Act 86—980, which included two sections and was effective July 1, 1990. Section 1 of Public Act 86—980 added a provision to the Juvenile Court Act of 1987, allowing the confiscation of weapons in the possession of minors who are found to be delinquent for weapons-related offenses. 705 ILCS 405/1—14 (West 1998) (formerly Ill. Rev. Stat. 1991, ch. 37, par. 801—14, repealed by Pub. Act 90—590, eff. January 1, 1999). Section 2 of Public Act 86—980 added sections to the Criminal Code of 1961 creating the offenses of aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 1998)) and inducement to commit suicide (720 ILCS 5/12—31 (West 1998)).

Defendant argues that the offense of inducement to commit suicide is unrelated to the Juvenile Court Act or the crime of aggravated battery with a firearm. The single subject rule pertains to how the individual provisions of an enactment relate to one subject, however, not how the provisions relate to each other. *Chavez*, 191 Ill. 2d at 112-13; *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 354-56 (1999).

Each enactment in Public Act 86—980 involves criminal conduct and each relates either to the Criminal Code or the Juvenile Court Act. In *People v. Wooters*, 188 Ill. 2d 500 (1999), the supreme court found that various sections of Public Act 89—203 (Pub. Act 89—203, eff. July 21, 1995) had a logical relationship to the subject of crime. Those provisions included an amendment to the Criminal Code expanding circumstances under which someone charged with a felony while on bail must appear in court for bail to be reset (720 ILCS 5/32—10 (West 1996)), an amendment to the Unified Code of Corrections adding provisions requiring the payment of restitution following convictions in domestic battery cases (730 ILCS 5/5—5—6, 5—6—3.1 (West 1996)), and the addition of a section to the Counties Code allow-

ing counties to establish and fund programs to reduce, prevent or control juvenile delinquency (55 ILCS 5/5—1120 (West 1996)). *Wooters*, 188 Ill. 2d at 511-12. Although the public act in *Wooters* ultimately was held unconstitutional based upon the inclusion of noncrime-related amendments to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15—1101 *et seq.* (West 1996)), the supreme court expressly found that the other sections passed constitutional muster because they bore a logical and natural connection to the single subject of "crime." *Wooters*, 188 Ill. 2d at 513. Like the constitutionally acceptable crime-related amendments in *Wooters*, the provisions of Public Act 86—980 all relate to the single and acceptable subject of crime. The enactments in Public Act 86—980 therefore do not violate the single subject rule.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

THEIS, P.J., and QUINN, J., concur.