FIFTH DIVISION

December 29, 2000

No. 1-98-3642

GERRY ROBERTS, ) Appeal from the

) Circuit Court of

Appellant, ) Cook County. 

)

) No. 95 CR 14600 and 95 CR 

) 14601, cons.

THE PEOPLE OF THE STATE OF ILLINOIS, )

) Honorable

Appellee. ) Lon William Shultz,

) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Gerry Roberts (Roberts) was convicted of vehicular hijacking (720 ILCS 5/18-3(a) (West 1994)) in a bench trial on April 8, 1995.  On May 13, 1997, the court sentenced him to 18 years' imprisonment.  On September 5, 1997, Roberts pled guilty to burglary (720 ILCS 5/19-1(a) (West 1996)) and was sentenced to six years imprisonment.  On June 15, 1998, Roberts filed a 
pro se
 petition for postconviction relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 
et seq.
 (West 1998)) for case number 95 CR 14601, where he pled guilty to the burglary.  However, he raised issues that only concerned his vehicular hijacking case, 95 CR 14600.  Acknowledging that Roberts' petition was intended to address issues from the hijacking case, the lower court reviewed his petition and then dismissed it for failing to raise issues of merit.  Defendant now appeals, arguing that the trial court erred in dismissing his
 postconviction petition as frivolous and without merit and that violations of the United States Supreme Court's decision in 
Apprendi v. New Jersey
, 530 U.S. __, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) occurred.    For the reasons that follow, we affirm.

We first provide a brief summary of the facts relevant to our decision.  At defendant's trial, the State presented evidence that on April 8, 1995, at approximately 4:10 p.m., defendant hijacked a vehicle at a shopping mall in Chicago.  Renee Balderrama, an eyewitness for the State, testified that on that afternoon, she and her sister were shopping at a store.  When they left the store, they passed the defendant who was wearing a purple jogging suit on his way into the store.  Renee testified that as her sister went to a second store, she waited in the driver's seat of her car in front of the first store.  Believing that her sister was coming, she unlocked the passenger-side door.  At that point, Roberts opened the door, entered the car, and commanded Renee to drive.  When Renee took the keys from the ignition, he grabbed her wrist and they struggled for the keys.  Renee testified that Roberts struck her in the face twice, and that she was able to open the driver-side door.  Finally, defendant said that he "was going to pop her," so she gave him the keys.  After trying to pull her back into the car, he finally pushed her out.  Renee's sister, Lisa Balderrama, testified that she recognized the defendant in a purple jogging suit entering the first store as she and her sister were exiting. 

Officer Fowler then testified that on the day of the offense, he was assigned to work at the shopping mall.  At around 4:00 p.m., he went to get some toothache medication from his personal van, which was in the shopping mall parking lot.  He stated that he saw the defendant in a purple jogging suit attempting to enter his van.  After seeing Officer Fowler, Roberts tried to get into the van that was parked in the next space.  Roberts then pushed Officer Fowler and ran away.  Detective Butwinski testified that he conducted a photo line-up for Renee, Lisa, and Officer Fowler, who all identified the defendant and the purple jogging suit.

The defense called Roberts as its only witness.  He testified that on the day of the offense, he was at the Cabrini Green apartment complex from around 2:00 p.m. until 5:00 p.m., first fixing a washing machine, and then helping fix someone's car.  His uncle, Jerry Robertson (Robertson) (also referred to as Gary Roberts and Gary Robertson) had been with him, and then left around 2:00 p.m., borrowing defendant's van.  Roberts stated that he finally left around 5:00 with a friend.  Shortly before 7:00 p.m., on the corner of Ashland and Roosevelt, the defendant and his friend were shot, and Roberts was taken to the hospital.  On the stand, Roberts denied taking Renee's car or hitting her.  Roberts also denied asking the detectives at the hospital how he had gotten away after breaking into someone's van, while his uncle had not.

In rebuttal, the State called Detective Butwinski, who stated that when he interviewed the defendant at the hospital, the defendant asked him how he had gotten away while his uncle, who was seated in the passenger side of the van, had not.

The trial court convicted Roberts of vehicular hijacking, and on May 30, 1996, it sentenced him to 18 years imprisonment.  On April 29, 1997, Roberts attempted to file a late notice of appeal.  However, on June 14, 1997, the trial court denied the motion and stated that the appellate court had jurisdiction over the matter.

On June 15, 1998, defendant filed a petition for postconviction relief, alleging that his constitutional rights were violated by the pretrial identification, defense counsel's failure to investigate and call Robertson and another woman as alibi witnesses, defense counsel's failure to file an appeal, defense counsel's cumulative errors, the trial court's error in admitting evidence regarding a prior offense between defendant and Officer Fowler, and finally, that there was insufficient evidence presented at trial to support a finding of guilt. 

The postconviction court then analyzed each claim individually.  First, the court found that the claim of impropriety in the photo array was unsupported by the record where the record revealed that the methods the police used were not unnecessarily suggestive or unreliable.  Therefore, the court found that claim to be without merit.  The court also found that there were no affidavits attached to the petition supporting the claim that defense counsel was ineffective for failing to call alibi witnesses, and therefore, there was no merit to that claim.  With regard to counsel's failure to file an appeal, the court found that Roberts failed to establish that counsel was retained for an appeal.  Additionally, he was informed of his right to appeal following sentencing, and he waived his right through his inaction.  Consequently, the court felt that there was no cumulative effect of the errors because trial counsel had not been held ineffective on any of the counts.  Moreover, the court found that the failure to exclude prior crimes was not in error and that the events were sufficiently related in time and location to identify defendant as the offender.  In viewing the evidence in the light most favorable to the prosecution, the court also found that defendant was found guilty beyond a reasonable doubt.  Based on the postconviction court's review of each allegation, it dismissed the petition as frivolous and patently without merit. 

On October 6, 2000, defendant filed supplemental authority regarding violations of the United States Supreme Court's decision in 
Apprendi v. New Jersey
, 530 U.S. __, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)).  For the reasons that follow, we affirm the trial court's dismissal of defendant's postconviction motion.

We first address defendant's 
Apprendi
 concerns.  In 95 CR 14600, the trial court found Roberts guilty of the Class 1 offense of vehicular hijacking (720 ILCS 5/18-3(a) (West 1994)).  The sentencing range for a Class 1 offense is 4 to 15 years.  730 ILCS 5/5-8-1(a)(4) (West 1994).  The trial court, however, determined that it should sentence him as a Class X offender due to the timing, degree, and sequence of his prior convictions.  The statutory sentencing range for Class X felons is 6 to 30 years (730 ILCS 5/5-5-3(c)(8) (West 1994)), and defendant was ultimately sentenced to 18 years.  

The Class X sentencing provision at issue, section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 1994)), provides that when a 
defendant over the age of 21 in convicted of a Class 1 or Class 2 felony, after having been convicted twice of a Class 1 or Class 2 felony in Illinois, and such charges are separately tried and arise out of different series of acts, the court is required to sentence the defendant as a Class X offender if: the first felony was committed after the effective date of the amendatory act; the second felony was committed after conviction of the first; and the third felony was committed after conviction of the second.

It is undisputed that the State is not required to give the defendant notice if it intends to sentence him as a Class X offender.  
People v. Jameson
, 162 Ill. 2d 282, 292 (1994).  It is further uncontested that section 5-5-3(c)(8) contains no provision for a jury determination of whether the required facts exist to charge a defendant under that section.  Put another way, proof beyond a reasonable doubt of the qualifying convictions is not required for a court to impose a Class X sentence on a defendant convicted of a Class 1 or Class 2 offense.  
People v. Williams
, 149 Ill. 2d 467, 492 (1992).

In 
Apprendi
, the United States Supreme Court held that "‛under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'"  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355, quoting 
Jones v. United States
, 526 U.S. 227, 243, n.6, 143 L. Ed. 2d 311, 326, n.6, 119 S. Ct. 1215, 1224, n.6 (1999).  Using this reasoning
, defendant argues that because the statute pursuant to which he was sentenced increased the maximum penalty to which he was subject for vehicular hijacking without any requirement of notice of the facts that subjected him to that increased penalty and a jury determination of whether those facts exist upon proof of a reasonable doubt, his Class X sentence should be vacated and the cause remanded for resentencing under the Class 1 guidelines.  The constitutionality of a statute is a question of law which is reviewed 
de novo
. 
People v. Fisher
, 184 Ill. 2d 441, 448 (1998).

In 
People v. Clifton
, Nos. 1-98-2126, 1-98-2384 cons., slip op. at 55 (September 29, 2000), this court recently determined that section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1998)), which permits the trial court to impose consecutive sentences, is unconstitutional under 
Apprendi
.  In its reasoning, the 
Clifton
 court found that the effect of section 5-8-4(a) is to enlarge the maximum sentence to which a defendant may be exposed for his conduct and that, "[i]f consecutive sentences are to be imposed pursuant to a factual finding that severe bodily injury occurred, then severe bodily injury will have to be submitted to a jury and proved beyond a reasonable doubt."  
Clifton
, slip op. at 55.  Based on this finding, the 
Clifton
 court vacated defendant's consecutive sentences and ordered them to run concurrently.

 Before reaching the merits of Roberts' 
Apprendi
 claim, however, we must first contemplate whether it applies to cases on collateral review.  In 
Clifton
, the defendant filed a direct appeal from the judgment of his conviction, and under the United States Supreme Court's decision in 
Griffith v. Kentucky
, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716 (1987), new constitutional rules of criminal procedure, like 
Apprendi
, apply retroactively to all cases– state or federal– pending on direct review or not yet final.  Accordingly, the 
Clifton
 court retroactively applied the prescripts of 
Apprendi
 to that case.  In the present case, however, Roberts
 appealed from the dismissal of his postconviction petition.  Currently, the First District is in a state of flux as to whether new constitutional rules of criminal procedure should be applied retroactively to collateral proceedings.

In 
dicta
, the court in 
Clifton
 aligned itself with the argument that new constitutional rules of criminal procedure do not apply retroactively to postconviction proceedings.  
Clifton
, slip op. at 51, n.3, citing 
Teague v. Lane
, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989); 
People v. Flowers
, 138 Ill. 2d 218 (1990).  In 
People v. Frederick Kizer
, No. 1-99-0733, slip op. at 20 (December 26, 2000), this court recently confirmed that rule and held that 
Apprendi
 is not applicable to postconviction petitions.  

The support for this argument arises from a line of cases where the courts have declined to retroactively apply other newly adopted constitutional rules in postconviction proceedings while acknowledging the ability and propriety of a reviewing court to retroactively apply them in cases on direct appeal.  For example, in 
People v. Dean
, 175 Ill. 2d 244 (1997), the Illinois Supreme Court decided whether its decision in 
People v. Fitzpatrick
, 158 Ill. 2d 360 (1994) (striking down section 106 B-1 of the Code of Criminal Procedure of 1963 (the Child Shield Act) (Ill. Rev. Stat. 1991, ch. 38, par. 106 B-1) as unconstitutional) should be applied retroactively:

"The defendant here contends that the appellate court erred by failing to apply this court's decision in 
Fitzpatrick
 to his case.  Our 
Fitzpatrick
 opinion was filed on February 17, 1994, after the defendant was convicted and while his direct appeal was pending before the appellate court.  We must therefore determine whether our decision in 
Fitzpatrick
 applies retroactively to the defendant's case.

The standard for applying judicial opinions retroactively was set forth in 
People v. Erickson
, 117 Ill. 2d 271[, 513 N.E.2d 367] (1987).  In 
Erickson
, this court held that judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to all cases pending on direct review at the time the new constitutional rule is declared.  
Erickson
, 117 Ill. 2d at 288, citing 
Griffith v. Kentucky
, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716 (1987).  More specifically, retroactivity is triggered when two factors are present:  (1) the case to which the new rule is to be applied was not final or was pending on direct review when the rule was declared, and (2) the rule to be applied retroactively is of constitutional dimension.  
Erickson
, 117 Ill. 2d at 289; see also 
People v. Gersch
, 135 Ill. 2d 384, 393[, 553 N.E.2d 281] (1990); 
People v. Shields
, 143 Ill. 2d 435, 442[, 575 N.E. 2d 538] (1991).  Both of these factors are present in the instant case.  The defendant's case was pending on direct review before the appellate court when this court rendered its decision in 
Fitzpatrick
.  Second, this court's ruling in  
Fitzpatrick
 is clearly a new rule of constitutional dimension.  Although the 1970 Illinois Constitution's confrontation clause included the language ‛face to face,' this court in 
Fitzpatrick
 first announced that a defendant was deprived of his right to confrontation when he was unable to confront witnesses face to face.  Thus, pursuant to the above standard, we hold that the 
Fitzpatrick
 decision applies retroactively to the defendant's case.

Parenthetically, we note that 
Fitzpatrick
 should also be applied retroactively to cases pending on direct appeal given its determination that the Child Shield Act was unconstitutional.  In 
People v. Gersch
, 135 Ill. 2d 384 (1990), this court addressed whether a decision finding a statute unconstitutional should be applied retroactively to a case that was pending on direct review.  We stated: ‛To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right.' 
Gersch,
 135 Ill. 2d at 397.  We agree with and adopt this rationale in the present case."  
Dean
, 175 Ill. 2d at 252-54.

Likewise, in 
People v. Shields
, 143 Ill. 2d 435, 442 (1991), the supreme court decided whether its decision in 
People v. Reddick
, 123 Ill. 2d 184 (1988) (holding as erroneous the then-existing Illinois pattern jury instructions for murder and voluntary manslaughter when given together) should be applied retroactively:  

"[O]ur decision in 
People v. Erickson
 (1987), 117 Ill. 2d 271, [513 N.E.2d 367,] requires that a constitutional holding be applied retroactively to cases pending on direct review at the time the decision was announced.  Because the holding in  
Reddick
 is of constitutional dimension, and because the appeals now before us were pending on direct review when 
Reddick
 was decided, the 
Reddick
 decision applies retroactively to the defendants in these cases.  
Erickson
, 117 Ill. 2d at 289."  
Shields
, 143 Ill. 2d at 445.  

However, in 
People v. Flowers
, 138 Ill. 2d 218, 240 (1990), the court declined to apply 
Reddick
 to cases pending on collateral review.  It held that actions pursuant to our Post-Conviction Hearing Act are similar to 
habeas corpus
 proceedings and, therefore, that the court should adopt the reasoning of 
Teague
.  
Teague
 specifically held that decisions establishing new constitutional rules of criminal procedure are not to be applied retroactively to cases pending on collateral review unless the new rule either (1) places "certain kinds of primary, private individual conduct beyond the power of criminal law-making authority to proscribe" or (2) "requires the observance of ‛those procedures that . . . "are implicit in the concept of ordered liberty [citations]"'."  
Teague
, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076.  Finding the first exception irrelevant, the 
Flowers
 court concluded that in narrowly construing the second exception as required under 
Teague
, the 
Reddick
 rule did not establish "such a component of basic due process so as to fall within it."  
Flowers
, 138 Ill. 2d at 242. 

This argument
 stresses that the court in 
Flowers
 recognized that 
Reddick
 changed the law with regard to the burden of proof and the elements of the offense of voluntary manslaughter, yet still held that 
Reddick
 was not applicable to cases pending on collateral review.  In narrowly construing the second exception under 
Teague
, therefore, the argument follows that this court also should not apply 
Apprendi
 to appeals of postconviction petitions.

It is precisely at this point that those who believe that 
Apprendi
 should be applied retroactively to collateral proceedings disagree.  In the recently modified opinion on denial of petition for rehearing, this court in 
People v. Beachem
, No. 1-99-0852, slip op. at 18-20 (December 6, 2000), found that the supreme court's holding in 
Flowers
 can be distinguished from the facts in an 
Apprendi
 situation:

"In 
Flowers
, the Illinois Supreme Court held that 
People v. Reddick
, 123 Ill. 2d 184, 526 N.E.2d 141 (1988), did not apply to cases on collateral review.  The 
Reddick
 court had found unconstitutional jury instructions which erroneously stated the burden of proof for voluntary manslaughter mitigating mental states.  The 
Flowers
 court recognized 
Reddick
 involved a ‛grave' jury instruction error ‛of constitutional dimension' (
Flowers
, 138 Ill. 2d at 236-37), but declined to place a 
Reddick
 error within 
Teague
's second exception: ‛This exception must be narrowly construed and we do not believe that the 
Reddick
 rule established such a component of basic due process so as to fall within it.'  
Flowers
, 138 Ill. 2d at 242.

Reddick
 discussed the constitutional obligation of the jury to follow the trial judge's instructions (see 
People v. Jenkins
, 69 Ill. 2d 61, 66-67 (1977)), but, unlike * * * 
Apprendi
,[
(footnote: 1)] it did not implicate the right to a jury verdict beyond a reasonable doubt and, consequently, the fundamental fairness and accuracy concerns inherent in the 
Teague
 exception.

Apprendi
 tells us we deal with ‛constitutional protections of surpassing importance.'  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355.  The reasonable doubt standard ‛reflect[s] a profound judgment about the way in which law should be enforced and justice administered.'  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 447-48, 120 S. Ct. at 2356, quoting 
In re Winship
, 397 U.S. 358, 361-62, 25 L. Ed. 2d 368, 374, 90 S. Ct. 1068, 1071.  Our jury tradition is ‛an indispensable part of our criminal justice system.'  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.  How, then, could we say that we do not deal with procedures that are implicit in the concept of ordered liberty?  Have we not reached ‛bedrock'?"  
Beachem
, slip op. at 18-19.

Whether 
Apprendi
 violations may be addressed in a collateral, postconviction proceeding is something we need not decide in this case.  For even if we determined that we were able to address the 
constitutionality concerns defendant raises regarding the trial court's consideration of his past convictions, we find that his petition still does not fall within the pale of 
Apprendi
 relief.  As previously stated, 
Apprendi
 held that the United States Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, 
other than the fact of a prior conviction
, must be submitted to a jury and proved beyond a reasonable doubt.  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355.  (Emphasis added.)  The 
Apprendi
 Court cited its reasoning from 
Jones
, which quoted another decision, 
Almendarez-Torres v. United States
, 523 U.S. 224,  140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998):

"[A]s 
Jones
 made crystal clear, 526 U.S. at 248-249, [119 S. Ct. 1215,] our conclusion in 
Almendarez-Torres
 turned heavily upon the fact that the additional sentence to which the defendant was subject was ‛the prior commission of a serious crime.'  523 U.S. at 230[, 118 S. Ct. 1219]; see also 
id.
, at 243[, 118 S. Ct. 1219] (explaining that ‛recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence');
 id.
 at 244[, 118 S. Ct. 1219] (emphasizing the fact that recidivism "does not relate to the commission of the offense . . ."); 
Jones
, 526 U.S. at 249-250, n. 10[, 119 S. Ct. 1215] (‛The majority and the dissenters in 
Almendarez-Torres
 disagreed over the legitimacy of the Court's decision to restrict its holding to recidivism, but both sides agreed that the Court had done just that')."  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 454, 120 S. Ct. at 2361-62.

While the 
Apprendi
 majority stated that "it is arguable that 
Almendarez-Torres
 was incorrectly decided" 
(Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362), the Court was clear that it was not overruling its prior decision. We find language from a case in the federal District Court for the Eastern District of Pennsylvania to be on point:

"[D]espite the Court's reservations about its continuing validity, the [
Apprendi
] Court chose not to overrule 
Almendarez-Torres
.  ‛Needless to say, only [the Supreme Court] may overrule one of its precedents.  Until that occurs, [
Almendarez-Torres
] is the law.'  
Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.
, 460 U.S. 533, 103 S. Ct. 1343, 75 L. Ed. 2d 260 (1983) (
per curiam
); see also 
Hutto v. Davis
, 454 U.S. 370, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (
per curiam
) (‛But unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts think it to be.').  Since 
Almendarez-Torres
 was plainly addressed, but not overruled by the Supreme Court in 
Apprendi
, the court is obligated to apply it in this case."  
United States v. Powell
, 109 F. Supp. 2d 381, 383 (E.D. Pa. 2000).

Because 
Almendarez-Torres
 is still good law, we reject defendant's assertion that 
Apprendi
 renders recidivist provisions unconstitutional.

We next address defendant's single subject constitutionality concerns.  The Post-Conviction Hearing Act creates a three-step process for adjudicating claims of constitutional deprivation following a criminal conviction.  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  In the first stage, the trial court examines the petition and determines whether the petition "is frivolous or patently without merit."  
Gaultney
, 174 Ill. 2d at 418; 725 ILCS 5/122-2.1(a)(2) (West 1998).  If the petition is not dismissed, it proceeds to stage two.  At the second stage, counsel is appointed if the petitioner is indigent and has requested representation; the attorney is given the opportunity to amend the petition; and the State may move to dismiss on the merits.  725 ILCS 5/122-4, 122-5 (West 1998); 
Gaultney
, 174 Ill. 2d at 418.  If the petition is not dismissed on the State's motion, the petition moves to stage three, an evidentiary hearing.  
Gaultney
, 174 Ill. 2d at 418.

Defendant's postconviction petition was dismissed by the trial court as frivolous and patently without merit at the first stage.  Section 122-2.1 of the Post-Conviction Hearing Act, which provides for stage one dismissals, became effective with the enactment of Public Act 83-942, effective November 23, 1983.  However, defendant contends that the enactment of Public Act 83-942 violated the single subject clause of the Illinois Constitution.

Public Act 83-942, entitled "An Act in relation to criminal justice and correctional facilities," contains five subsections which amend provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38 par. 1-1 
et seq.
, now 720 ILCS 5/1-1 
et seq.
 (West 1996)), the Post-Conviction Hearing Act, the Unified Code of Corrections, the Industrial Project Revenue Bond Act (Ill. Rev. Stat. 1983, ch. 24 par. 11-74-1 
et seq.
, now 65 ILCS 5/11-74-1 
et seq.
 (West 1996)), the Industrial Revenue Bond Act (Ill. Rev. Stat. ch. 85 par. 871 
et seq.
, now 50 ILCS 445/1 
et seq.
 (West 1996)), and the Civil Administrative Code (now 20 ILCS 5/1 
et seq. 
(West 1996)).  Defendant asserts that the Public Act 83-942, which is primarily aimed at alleviating prison overcrowding, focuses on administrative amendments to statutes having some relation to prison construction, the housing of inmates, and the structure of the Illinois Criminal Sentencing Commission.  He claims, however, that sections 1 and 1A depart from these administrative provisions by expanding the scope of the substantive criminal offense of threatening a public official (Ill. Rev. Stat. 1983, ch. 38 par. 12-9, now 720 ILCS 5/12-9 (West 1998)) and by narrowing the scope of the Post-Conviction Hearing Act (Ill. Rev. Stat 1983, ch. 38 par. 122-2.1(a)(2), now 725 ILCS 5/122-2.1(a)(2)
 (West 1998)).  Defendant then cites the Illinois Supreme Court's decision in 
People v. Cervantes
, 189 Ill. 2d 80, 86-87 (1999), where the court held that including a provision on the ownership and operation of secure residential youth facilities under the regulation of the Department of Corrections in an act otherwise dedicated to substantive criminal offenses and sentencing violated the single subject rule.  Defendant concludes, "an act which does the opposite, amending criminal and postconviction statutes in an otherwise administrative prison bill, can be no less constitutional."  

"This court conducts 
de novo
 review of a circuit court's holding that a statute is unconstitutional.  
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441[, 701 N.E.2d 1056] (1998).  All statutes carry a strong presumption of constitutionality.  
Russell
, 183 Ill. 2d at 441.  The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation.  
Russell
, 183 Ill. 2d at 441."  
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 351 (1999).  The Illinois Constitution limits the General Assembly's power to enact legislation by providing, in relevant part, that "[b]ills, except bills for appropriation and for the codification, revision or rearrangement of laws, shall be confined to one subject."  Ill. Const. 1970, art. IV, § 8(d).  The dual purposes of the single subject rule are to "facilitate the enactment of bills through a legislative process that is orderly and informed" and to "prevent the enactment of legislation that, standing on its own, could not garner the votes necessary for passage."  
People v. Reedy
, 186 Ill. 2d 1, 13-14 (1999). 

"The principles applied in analyzing a single subject challenge have long been established in Illinois jurisprudence.  An enactment satisfies the single subject requirement so long as the matters included within it have a natural and logical connection.  
E.g.
, 
People v. Reedy
, 186 Ill. 2d 1, 9[, 708 N.E.2d 1114] (1999);  
Johnson v. Edgar
,176 Ill. 2d 499, 515[, 680 N.E.2d 1372] (1997); 
Cutinello v. Whitley
, 161 Ill. 2d 409, 423-24[, 641 N.E.2d 360] (1994); 
People ex rel. Ogilvie v. Lewis,
 49 Ill. 2d 476, 487[, 274 N.E.2d 87] (1971).  The term ‛subject' as set forth in the constitution is liberally construed in favor of upholding the legislation.  
Johnson
, 176 Ill. 2d at 515[, 680 N.E.2d 1372].  

‛"‛The term "subject" is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection.  An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of a legislative purpose.  Nor is the constitutional provision a limitation on the comprehensiveness of the subject;  rather, it prohibits the inclusion of "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other."  [Citation.]'"'  
Ogilvie
, 49 Ill. 2d at 487, [274 N.E.2d 87,] quoting 
People ex rel. Gutknecht v. City of Chicago
, 414 Ill. 600, 607-08[, 111 N.E.2d 626] (1953), quoting 
People ex rel. City of Chicago v. Board of County Commissioners,
 355 Ill. 244, 247[, 189 N.E. 26] (1934)."  
Arangold
, 187 Ill. 2d at 351-52.

Thus, an act "violates the single subject rule when the General Assembly includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another." 
Cervantes
, 189 Ill. 2d at 84, quoting 
Reedy
, 186 Ill. 2d at 9.  "As the supreme court recently reiterated in 
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101[, 728 N.E.2d 476] (2000) (
Chavez
), this ‛natural and logical connection' test does not require that the various provisions within an enactment be related to each other, but merely must relate to a single subject.  
Chavez
, 191 Ill. 2d at 112."  
People v. Vazquez
, 315 Ill. App. 3d 1131, 1135 (2000).  A brief summary of each section of the Act follows.

Section 1 of the Act amended section 12-9 of the Criminal Code by adding threats against a variety of local government officeholders to the offense of threatening public officials.

Section 1A amended section 122-2.1 of the Code of Criminal Procedure and required trial judges to review and dismiss postconviction petitions deemed frivolous or patently without merit.  It further amended section 122-4 by limiting the appointment of counsel to indigent petitioners requesting representation only where their petitions were not dismissed pursuant to the new dismissal procedure.  

Section 2 of the Act amended a few provisions in the Unified Code of Corrections.  The "Powers and Duties of the Department" set forth in section 3-2-2 (now 730 ILCS 5/3-2-2 (West 1998)) were expanded, allowing the Department of Corrections (DOC) to authorize the Department of Central Management Services to accept bids from local government entities for the construction of DOC facilities.  This amendment also provided that construction could be financed with revenue bonds, created lease terms, and required General Assembly approval of submitted bids.

Section 2 also amended he portion of the Unified Code of Corrections regarding "Records and Reports" by creating section 3-5-3.1 (now 730 ILCS 5/3-5-3.1 (West 1998)), which required the DOC to submit quarterly statistical reports to the General Assembly regarding the number and types of offenders in its facilities, inmate participation in rehabilitative programs, ratio of guards and employees to inmates, the capacity of each DOC facility, data on the floor space and double-celled inmates, the status of all DOC capital projects, and projections on the future prison population.

Section 2 also added subsection (b) to section 3-7-2 (now 730 ILCS 5/3-7-2 (West 1998)), requiring the Governor to provide notice to the President of the Senate, Speaker of the House, and the minority leaders in both houses prior to any public or private announcement regarding the selection of a new cite for prison construction.

Section 2 also amended the Unified Code of Corrections as it related to "Institutional Safety and Sanitation," by deleting the requirement that each institution provide a minimum of 50 square feet of floor space per inmate as previously set forth in section 3-7-3, and precluded the DOC from mandating minimum square footage requirements in local jails pursuant to its authority under section 3-15-2 (now 730 ILCS 5/3-15-2 (West 1998)).

Section 2 concluded with amendments to the provisions of section 5-10-1 (now 730 ILCS 5/5-10-1 (West 1998)) governing the Illinois Criminal Sentencing Commission.  That section added a thirteenth member to the commission, changed the director of the DOC position from the executive director to an 
ex officio
 member, provided for the hiring and compensation of a new executive director, amended the terms of current and future appointees, and granted the executive director the authority administer operations regardless of vacancies on the commission.

Section 3 of the Act amended the Municipal Code (now 65 ILCS 5/11-74-2 (West 1998)) by adding prison construction to those industrial projects for which municipalities may issue bonds pursuant to section 11-74-4 of the Industrial Project Revenue Bond Act (now 65 ILCS 5/11-74-4 (West 1998)).

Section 4 made a similar amendment to the Industrial Building Revenue Bond Act (now 50 ILCS 405/67.02 (West 1998)) to correspond with the amendment to section 3-2-2 contained in section 2 of the Act regarding prison bidding as previously set forth.

Section 6 provided that the Act become effective upon becoming law, which occurred November 23, 1983. 

Roberts argues that the relationship between the provisions enacted in Public Act 83-942 is insufficient to unite the amendments under any subject sufficiently narrow to pass constitutional muster.  He further argues that the legislature purposefully included two subjects in the title of the act – criminal justice and correctional facilities – because some provisions are related only to criminal justice while others are related to correctional facilities.  For example, he states, "while facilitating the construction of new prisons is clearly related to the topic of ‛correctional facilities,' an insufficient nexus exists between that construction and the subject of ‛criminal justice' for purposes of single subject analysis."  See 
Cervantes
, 189 Ill. 2d at 95-97 (rejecting the argument that resultant increased housing for juvenile offenders was sufficiently related to substantive criminal and sentencing provisions because it provided the financial and procedural means to implement penalties for crime and to rehabilitate offenders).  Similarly, he argues, whether legislative leaders are notified before the Governor holds a press conference to announce that a particular town has been chosen for a new prison site is connected to the subject of correctional facilities, but has no conceivable impact on whether justice is served in criminal proceedings or sentencing.

 On the other hand, the inclusion of new local officeholders to the list of individuals protected by section 12-9 of the Criminal Code and a trial court's dismissal of a postconviction petition prior to the appointment of counsel may be related to the topic of criminal justice, but they are not related to the subject of correctional facilities.  Ultimately, Roberts concludes that while "criminal justice and correctional facilities" might be a permissible subject to unite various provisions of a public act under many circumstances, it cannot, by the addition of a conjunction between the two subjects, transform a series of topics so disparate as those in Public Act 83-942 into a single subject.  Further, he claims, no other single topic exists that is broad enough to encompass these provisions yet narrow enough to render the single subject clause meaningless.  See, 
e.g.
, 
Johnson
, 176 Ill. 2d at 517-18 ("public safety" too broad a subject to encompass topics as diverse as child sex offenders, employer eavesdropping, and environmental impact fees).

The Illinois Supreme Court has already determined the topic of "criminal and correctional matters" to be an appropriately narrow subject to withstand a single subject challenge.  In 
People v. Malchow
, No. 88228 (September 21, 2000), the Illinois Supreme Court rejected a single subject challenge to Public Act 89–8, effective March 21, 1995 entitled "An Act in relation to criminal and correctional matters, amending named Acts," which amended 13 different acts.  Although these amendments were not related to one another and included several objectives or purposes, the court held that examination of the enactment illustrated that these changes were related to the single subject of "crime and correctional matters."  
Malchow
, slip op. at 12.  In citing 
People v. Wooters
, 188 Ill. 2d 500 (1999), the court noted that it had already determined that "the legislature could pass legislation that amended several acts, as long as the amendments related to the single subject of "crime."  
Malchow
, slip op. at 12.  At last, the court noted that while at first glance the amendments to civil codes and the medical practice code seem unrelated, in examining the bill's language, it found that they were related to the single subject of "crime and correctional matters.  
Malchow
, slip op. at 12.

In the present case, even though Public Act 83–942 involved amendments to many different codes, the single subject rule does not require that an act's provisions all be within the same code in determining whether the matters in the bill have a natural and logical connection  
Malchow
, slip op. at 11.  Accordingly, in construing the term "subject" in favor of the legislature (
Reedy
, 186 Ill. 2d at 8-9), we need only find that each amendment has a natural and logical connection to the single subject of "criminal and correctional matters."  Per defendant's own argument, Sections 1 and 1A have a natural connection to criminal matters, and sections 2 through 5 have a logical relation to correctional matters.  Consequently, we find that defendant has failed to meet his burden of demonstrating that the provisions of Public Act 83–942 bear no natural or logical connection to this subject.

Because we find that the plain and ordinary meaning of Public Act 83–942 makes clear that there is no single subject violation, we need not examine its procedural history to sustain its constitutionality.  "‛The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago
, 
Inc.
, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994); 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990).  The words of a statute are given their plain and commonly understood meanings.  
Forest City Erectors v. Industrial Comm'n
, 264 Ill. App. 3d 436, 439, 636 N.E.2d 969, 972 (1994).  Only when the meaning of the enactment is unclear from the statutory language will the court look beyond the language and resort to aids for construction.  
Solich
, 158 Ill. 2d at 81, 630 N.E.2d at 822.'"  
Panhandle Eastern Pipe Line Co. v. Environmental Protection Agency
, 314 Ill. App. 3d 296, 301 (2000), quoting 
R. L. Polk & Co. v. Ryan
, 296 Ill. App. 3d 132, 139-41, 694 N.E.2d 1027, 1033-34 (1998). 

For the foregoing reasons, we affirm the result of the trial court in dismissing Roberts' petition.

Affirmed.

THEIS, J., concurs.

QUINN, P.J., specially concurring.

PRESIDING JUSTICE QUINN specially concurring.

I concur with the holding that defendant's petition "does not fall within the pale of 
Apprendi
 relief." I write separately to say that I believe we should have reached this conclusion for the additional reason that 
Apprendi
 does not apply retroactively to cases on collateral review under the Post-Conviction Hearing Act (725 ILCS 5/122-1 
et seq
. (West 1998)).  As pointed out earlier in this opinion, another division of the First District has held that 
Apprendi
 should be applied retroactively to collateral proceedings.  See 
People v. Beachem
, No. 1-99-0852, slip op. at 18-20 (December 6, 2000).  I disagree with the 
Beachem
 court's analysis of our supreme court's holding in 
People v. Flowers
, 138 Ill. 2d 218 (1990).  I completely agree with the analysis of another division of the First District in 
People v. Frederick Kizer
, No. 1-99-0733 (December 26, 2000).  Our supreme court in 
Flowers
 declined to apply its holding in 
People v. Reddick
, 123 Ill. 2d 184 (1988), retroactively to cases on collateral review.  The court in 
Kizer
 succinctly described the holding in 
Reddick
 thusly: "In 
Reddick
...the court found that the instructions made it not just less likely, as the lower standard of proof made it in 
Apprendi
, but 
impossible
 for a finder of fact following the burden of proof instructions to find the defendant guilty of the lesser crime rather than the greater.  
Reddick
, 123 Ill. 2d at 194-95."  (Emphasis in the original).   
Kizer
, slip op. at 20.  In spite of this, our supreme court found that the 
Reddick
 rule was not sufficiently fundamental so as to qualify under 
Teague v. Lane
, 489 U.S. 288, 103 L.Ed. 2d 334, 109 S.Ct. 1060 (1989) as an exception to the general proposition that new constitutional rules should not be applied to cases on collateral review.

I agree with the 
Kizer
 court that the holding in 
Flowers
 indicates how narrowly our supreme court interprets any exceptions to the 
Teague
 doctrine.  Consequently, I also agree with the 
Kizer
 court that 
Apprendi
 should not be applied retroactively to cases on collateral review.  As of the date of this concurrence, December 27, 2000 a search has turned up no case other than 
People v. Beachem
, in which a court of appeals (state or federal) or state supreme court has held that 
Apprendi
 should be applied retroactively.  As I believe that 
Apprendi
 should not be applied retroactively to collateral proceedings or review of the same, I concur in the holding in the instant case.

FOOTNOTES
1:  The 
Beachem
 court also analyzed several federal Circuit Court of Appeals cases that have considered the retroactivity of 
Victor v. Nebraska
, 511 U.S. 1, 127 L. Ed. 2d 583, 114 S. Ct. 1239 
(1994); 
Sullivan v. Louisiana
, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078
 (1993); and 
Cage v. Louisiana
, 498 U.S. 39, 112 L. Ed. 2d 339, 111 S. Ct. 328
 (1990), which held that jury instructions diluting the reasonable doubt standard were unconstitutional.  "These cases held that 
Cage
 and its progeny fall within 
Teague
's second exception because ‛[t]he reasonable doubt standard guards against conviction of the innocent by ensuring the 
systemic
 accuracy of the criminal justice system' and ‛use of a lower standard of proof frustrates the jury-trial guarantee.' (Emphasis in original.)  
Nutter v. White
, 39 F.3d 1154, 1157-58 (11th Cir. 1994) (
Cage
 applied retroactively); accord 
Gaines v. Kelley
, 202 F.3d 598 (2d Cir. 2000)* * *."  
Beachem
, slip op. at 17.